Verlin W. and Anna Jo KOONS, Appellants,

v.

UNITED STATES of America, Appellee.

Charles H. and Cecelia PARKER, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 17905, 17906.

United States Court of Appeals
Ninth Circuit.

March 28, 1963.

Janin, Morgan, Brenner & Freeman, Eugene J. Brenner, Melvin H. Morgan and Harry L. Freeman, San Francisco, Cal., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Edward L. Rogers, and Richard Perkins, Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., and Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and CROCKER, District Judge.

DUNIWAY, Circuit Judge.

Two actions are involved in these consolidated appeals. In each case the appealing taxpayers are husband and wife. In No. 17,905, the taxpayers will be referred to as "Koons" and in 17,906 they will be referred to as "Parker." Each case was an action to recover taxes erroneously paid, brought in the district court following denial of a claim for refund.

Koons was employed by Phillips Petroleum Corporation in Big Springs, Texas, where he resided. On December 16, 1958, he entered into a contract of employment with Aerojet General Corporation (Aerojet) to work at its plant near Sacramento, California. He had not previously been employed by that company. The agreement contained a promise by Aerojet to pay the travel expenses of Koons and his family from Big Springs to Sacramento, including per diem expenses while traveling, living expenses (called "relocation expense") after his arrival in Sacramento and for a period of not more than fifteen days at not more than $10 per day, and the cost of moving his furniture and belongings. Koons and his family left Big Springs on January 6, 1959 and arrived in Sacramento on January 9, 1959. On January 12, he advised Aerojet that he had arrived and had located a house. His furniture was delivered out of storage to his home on January 14, having been stored for two days. Thereafter, he was reimbursed by Aerojet in cash for the following items: travel expenses, $120.88, per diem travel expenses $40, relocation expenses $120, total $280.88. Aerojet also paid to the movers a total of $1,261.87, including $190.25 for two days storage. The total payments by Aerojet were $1,542.75. Except for the per diem expenses while traveling, Koons actually incurred and paid expenses in excess of the amounts reimbursed, and he submitted vouchers in order to receive reimbursement from Aerojet.

At the trial, Koons offered to prove that he was told that his furniture would arrive in Sacramento on a date later than that on which he informed Aerojet that he had located a house, so that he did not anticipate storage costs. This offer was rejected on the ground that the

testimony would be immaterial. Counsel also offered Koons' testimony as to the value to him of having his furniture transported and stored, but this offer was also rejected, as was his offer of testimony that had he known that the cost of moving was taxable income, he would have moved by rented trailer, which he had done on five other occasions. He was not allowed to testify as to the cost of such a move.

Parker was released from active duty with the Navy at Long Beach, California, on August 4, 1957. He entered into a similar contract of employment with Aerojet, by which he had not been previously employed. There was a similar promise by Aerojet to pay his expenses, including per diem, relocation expenses, and transportation of his furniture. Aerojet paid travel, per diem and relocation expenses totalling $199 and paid a moving company $634.29 for moving and storing his furniture. He also testified that he had previously moved by rental trailer, but the court refused to permit him to state the cost. Like Koons, he incurred more expenses than those for which he was reimbursed, and was required to submit vouchers to obtain reimbursement. He also testified that because he was on terminal leave from the Navy, it would have paid his transportation and moved his furniture to Sacramento for nothing. This testimony was stricken. In each case, Aerojet chose the moving companies; the taxpayers did not.

The Commissioner, as to each taxpayer, included in gross income for the appropriate year the cash received for travel expenses, per diem and relocation expenses, and the amounts paid to the moving company. The cases were tried with a jury. The court ruled as a matter of law that the payments above mentioned were includible in gross income and were not deductible by the taxpayers as expense, that the measure of income was the cash actually received for reimbursement for travel, per diem, and relocation expenses, plus the value of the moving of the taxpayers' household ef-

fects, the measure of which the court ruled was the fair market value of such services. In Koons' case, it held that as a matter of law, the price paid by Aerojet was the fair market value of such services. In the Parker case, it instructed the jury to disregard any special or subjective value to the taxpayers.

In each case, judgment was against the taxpayers, and they appeal. We conclude that the judgments must be affirmed.

■ 1. The payments, both those made directly to the taxpayers and those made to the moving companies, were includible in the gross income of the taxpayers. This matter was recently considered and decided adversely to the taxpayer in United States v. Woodall, 10 Cir., 1958, 255 F.2d 370, 79 S.Ct. 39, 3 L.Ed.2d 64. The taxpayer asks us to refuse to follow the Woodall case, but our consideration of that case, of the authorities there cited, and of those cited to us in the briefs, leads us to conclude that the Woodall case was correctly decided. We deem it unnecessary to add to the discussion in the opinion in the Woodall case. It is clear to us that, whatever either the taxpayers or Aerojet may have thought about the taxability of the payments and services, they were not gifts. They were a part of the bargain whereby the taxpayers were hired—an inducement offered by Aerojet in its endeavor to obtain employees whom it wanted. We find nothing in Commissioner v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218, or in United States v. Kaiser, 1960, 353 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233, which weakens, or militates against the correctness of, the decision in Woodall.

■ 2. The taxpayers' expenses in moving are not deductible expenses. This question was also raised and decided adversely to taxpayers in the Woodall case, and we agree with the reasoning in that decision.

■ 3. The court correctly ruled that the measure of the value of payments made to or for the benefit of the taxpayer is fair market value, not some

undefined and, to us, undefinable, value to the taxpayers.

The cash payments made to the taxpayers for travel expenses, per diem, and relocation expenses present no problem. These were money payments. The notion that money actually paid to a taxpayer and includible in his gross income is to be valued at less than its face amount because the taxpayer believed it nontaxable, or because, if he believed the payments taxable he would have travelled more cheaply, or for any other reason, is novel, to say the least. We cannot accept it.

As to the moving expense, i. e., the amounts paid to the moving companies directly by Aerojet, taxpayers made no real effort to show that the amounts so paid did not represent the fair market value of the services rendered. It was shown that the California Public Utilities Commission has established minimum rate tariffs for the moving of household furniture and that in auditing freight bills Aerojet applies either these minimum rates or the prevailing rates in determining proper charges for removal of household furnishings. It was also shown that the services actually rendered could not have been obtained for less than what Aerojet paid for them. The foregoing applies to the Parker case, but similar comments can be made as to the Koons case, except that the rates were not controlled by the California Public Utilities Commission. In neither case did the taxpayer present any evidence which would support a finding that the Commissioner's determination that the amounts paid were the fair market value of the services rendered, was erroneous. They thus did not overcome the presumption of the correctness of the Commissioner's determination, assuming that fair market value is the correct measure of the amount to be included in income.

The taxpayers, however, assert that in the case of Koons, he could have provided the services himself at much less cost, and that the storage of his furniture was unnecessary and so of no value to him, and that in the case of Parker, he could have obtained the services from the Navy for nothing, so that the services were of no value to him, and that they should have been allowed to present evidence as to these facts to the jury in support of their contention that the correct measure of value is, to quote appellants, "the value of the benefits to appellants." The taxpayers now assert, after the fact, that the services were of little or no value to them. The fact is, however, that they had no obligation to accept these services, that they did accept them, this being a part of the bargain with Aerojet, and that the services were in fact rendered and were paid for at the fair market value.

We think that the use of any such measure of value as is suggested is contrary to the usual way of valuing either services or property, and would make the administration of the tax laws in this area depend upon a knowledge by the Commissioner of the state of mind of the individual taxpayer. We do not think that tax administration should be based upon anything so whimsical. Under the rule suggested by appellants, if taxpayers A and B receive identical services having an identical fair market value, it is conceivable that, as to A, none of the value of the services would be includible in his income, whereas, as to B, double that value might be includible. We think that sound administration of the tax laws requires that there be as nearly objective a measure of the value of services that are includible in income as possible, and the only such objective measure that has been suggested to us, or that occurs to us, is fair market value. (See United States v. Davis, 1962, 370 U.S. 65, 71–74, 82 S.Ct. 1190, 8 L.Ed.2d 335; Treas. Reg. § 1.61–2(d) (1) (1957).)

Affirmed.