**Jarril F. KAPLAN and Jeanette Kaplan, his wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Elias M. ROMLEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. Civ–5804 Phx., Civ–6315 Phx.**

United States District Court
D. Arizona.

Nov. 21, 1967.

Neal Kurn, for Moore, Romley, Kaplan, Robbins & Green, Phoenix, Ariz., for plaintiffs.

Elliot H. Kajan, of Tax Division, United States Department of Justice, Washington, D. C., for defendant.

## OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

CRAIG, District Judge.

The above entitled cases arose out of the same series of transactions, and were consolidated for trial before this Court September 26, 1967.

On July 31, 1961, plaintiffs, Jarril F. Kaplan and Elias M. Romley, were partners in the law firm of Moore, Romley, Killingsworth and Kaplan. On that date there was received on behalf of the partnership, for legal services rendered, a conveyance of 40 acres of land described as the NW¼, SW¼, Section 34, T3N, R4E, G&SRB&M, Maricopa County, Arizona. On its amended partnership income tax return for the taxable year ending May 31, 1962, the land received was reported by the partnership to have a value of $54,000, or $1,350 per acre.

In January, 1965, the Commissioner of Internal Revenue sent to plaintiffs a statutory notice of deficiency in which it was stated the value of the land in question was $120,000, or $3,000 per acre. This reevaluation of the property in question resulted in assessed deficiencies in tax and interest against plaintiff, Romley, in the amounts of $36,312.-18 and $4,574.84, respectively, as of May 18, 1965. The deficiencies, with additional interest of $247.20, were paid under protest by plaintiff, Romley, July 2, 1965. This reevaluation of the property in question resulted in assessed

deficiencies in tax and interest against plaintiffs, Kaplan, in the amounts of $4,007.09 and $504.82, respectively. The deficiencies, with additional interest of $27.28, were paid under protest by plaintiffs, Kaplan, July 2, 1965.

On July 7, 1965, plaintiffs timely filed claims for refund which were disallowed for plaintiffs, Kaplan, November 9, 1965, and which were disallowed for plaintiff, Romley, January 10, 1966.

The within actions were instituted, pursuant to Title 28 U.S.C. § 1346(a) (1), for the purpose of recovering the respective taxes and interest which are asserted to have been erroneously assessed and collected.

The sole issue presented at the trial is the fair market value of the premises in question as of July 31, 1961. If the value of the premises as of July 31, 1961, is as asserted in the notice of deficiency, plaintiffs are entitled to nothing. If the value of the premises as of July 31, 1961, is as asserted and reported by plaintiffs in their amended partnership income tax return, or in an amount less than that asserted in the notice of deficiencies, plaintiffs are entitled to recover the difference between the amount assessed and paid under protest and the amount which would have been properly assessed had the premises in question been properly valued.

At the trial of this cause, evidence was presented to show that the basis of the value placed on the property in question in the income tax returns of plaintiff taxpayers was an appraisal by Robert L. Blake, a duly qualified real property appraiser. The government offered no evidence to show the basis upon which the Commissioner reached his conclusion as to valuation. When this Court made inquiry as to the basis of valuation relied upon by the Commissioner, counsel for the government declined to state the basis of that valuation.

In support of their conclusions as to value, and in addition to the appraisal of Blake (plaintiffs' Exhibit A), the plaintiff taxpayers offered the testimony of a duly qualified expert appraiser,

Larry Burke. Burke presented the usual comparable sales in the area, considered the specific property in question, and reached the conclusion that the fair market value for the subject property at a cash sale on the date it was acquired by plaintiffs' partnership was $50,000, or $1,250 per acre.

In support of the government's contention that the property had a fair market value at the time of acquisition of $120,000, or $3,000 per acre, the government relied upon the testimony of a duly qualified expert appraiser, John T. Hansen. Hansen presented the usual comparable sales in the area, some of which were used by Burke, considered the specific property in question, and reached the conclusion that the fair market value of the subject property upon terms typical in the area at the time the property was acquired by plaintiffs' partnership was $110,000, or $2,750 per acre. Hansen further concluded that a cash sale would be less than his conclusion as to a sale on terms, but did not say what that amount would be.

In addition to the appraisal reports and the testimony of the experts, various exhibits in the form of plats and photos were introduced. Testimony was received with respect to the nature and condition of the property at the time of acquisition. Upon stipulation of counsel, the Court personally viewed the property and its environs.

So far as it is pertinent to the issues in this case, § 1.61–2(d) (1) of the Federal Tax Regulations provides:

> "*Compensation paid other than in cash—(1) In general.* If services are paid for other than in money, the fair market value of the property or services taken in payment must be included in income. * * *" (1, FTR, 1964, 80.)

In reaching a conclusion with respect to "fair market value," within the meaning of the regulation as to any given property, certain factors must be considered, i. e., the nature of the property, the highest and best use to which

the property may be put, the location of the property, the uses and desirability of the property in the neighborhood. Each of these factors, among others, would be considered by a willing seller, not forced to sell, and a willing buyer, not acting under compulsion. Buyer and seller would be expected to be informed as to the specific property, and informed as to the market for comparable property in the area.

The subject property, at the time of acquisition by plaintiffs' partnership, was unimproved desert land, approximately five-sixths of it being located either within a wash or the flood plains of a wash, known as Indian Bend Wash. Anyone familiar with desert terrain knows that, due to the lack of vegetation at higher levels, excessive run-off takes place during the rainy season, and particularly during heavy rain. The run-off water seeks lower levels, and in some instances cuts sharp channels through the desert. In other instances the run-off water will spread out in its course, and will cover a broader and shallower area. Indian Bend Wash, at the location of the subject property, is of the latter character. Anyone familiar with desert country can observe the existence of a wash from the character and size of the desert growth, such as mesquite, palo verde, ironwood, greasewood and other such plant life. One does not need ariel photographs nor topographical surveys to determine the existence of such a wash.

In the instant case, the evidence discloses that approximately seven acres of the subject property could safely be developed as residential property. The remainder could be used for pasturage or recreational purposes, either in conjunction with the residential property within the tract, or in conjunction with adjacent residential property.

■ While other Courts have used varying language to define "fair market value," this Court is of the opinion that the regulation (supra) applicable to this case, and the cases generally support the conclusion that "fair market value"

means the cash price the property would have brought at the time of acquisition, considering its highest and most profitable use, if offered for sale on the open market in competition with like properties in the vicinity, given a reasonable time to find a purchaser. Under these circumstances, it should be further assumed that the seller is willing to sell, but not forced to sell; that the buyer is willing to buy, but not forced to buy; that both seller and buyer are informed on the date of the sale as to the circumstances and factors, favorable and unfavorable, with respect to the subject property; as to uses to which the subject property was then being put, and as to the highest and best use to which the property might then be put, or to which it might reasonably be put or adapted in the reasonably foreseeable future. Elmhurst Cemetery Co. of Joliet v. Commissioner of Internal Revenue, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; Goldstein v. Commissioner of Internal Revenue, 9 Cir., 298 F.2d 562; Mandl v. City of Phoenix, 41 Ariz. 351, 18 P.2d 271.

In passing it is interesting to note that apparently nobody concurs in the assertion of the Commissioner as to the value of the subject property, although the government suggests that the conclusion of the Commissioner should be affirmed.

This Court, having considered the evidence; having viewed the subject property; having weighed the evidence adduced through the testimony of the several experts; having reviewed the memoranda submitted by counsel; and, being fully advised in the premises, finds and concludes:

## FINDINGS OF FACT

■ 1. The fair market value of the subject property as of July 31, 1961, the date of acquisition by the partnership, was $54,000, or $1,350 per acre.

2. The value of the subject property was properly reported as income in the amount of $54,000 on the amended part-

712

nership income tax return for the taxable year ended May 31, 1962.

## CONCLUSIONS OF LAW

1. The tax collected by the Internal Revenue Service, by virtue of the deficiency assessment of January 29, 1965, against plaintiffs Jarril F. Kaplan and Jeanette Kaplan, his wife, and subsequently paid by said plaintiffs under protest was erroneously collected.

2. The tax collected by the Internal Revenue Service, by virtue of the deficiency assessment of January 29, 1965, against plaintiff Elias M. Romley and subsequently paid by said plaintiff under protest was erroneously collected.

3. Plaintiffs, Kaplan, and plaintiff, Romley, are entitled to judgment against the defendant as prayed for.

4. If any finding of fact herein involves matters of both fact and law, to the extent that any such finding of fact may be construed more properly as a conclusion of law, the same is hereby adopted and incorporated herein as a conclusion of law.