C. James Charles v. Commissioner.
Charles v. Commissioner
Docket No. 367-69 SC.
United States Tax Court
T.C. Memo 1971-42; 1971 Tax Ct. Memo LEXIS 291; 30 T.C.M. (CCH) 182; T.C.M. (RIA) 71042; March 8, 1971, Filed. *291 Held: Petitioner failed to prove that he provided more than one-half of the support in 1963 for two children, David and Marshall Freeman, and, therefore, is not entitled to deductions for personal exemptions. Secs. 151(a), 151(e), and 152(a), I.R.C. 1954. Held, further: Petitioner is not entitled to a child care deduction under sec. 214, I.R.C. 1954, with respect to David Freeman because petitioner failed to prove that David was his "dependent" within the meaning of the statute. Held, further: Petitioner is not entitled to a casualty loss deduction in 1963 because he failed to prove that he incurred any losses in excess of the amount for which he was compensated by insurance. Held, further: Since petitioner did not establish the amount of certain expenses and losses which he allegedly incurred in connection with an alleged consulting business and an auction sale of real estate, he is not entitled to deductions for these alleged expenses and losses. Held, further: Although he deducted $48 for state gasoline taxes in 1963, petitioner is entitled to deduct only a portion of that amount. Held, further: Several claimed itemized deductions were not considered because petitioner failed *292 to prove that he was entitled to any such deductions in excess of the standard deduction allowed by respondent. C. James Charles, pro se, P.O. Box 6166, Cherry Creek Station, Denver, Colo.Charles H. Powers, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioner's income tax for 1963 in the amount of $696.02. Some of the issues have been conceded by petitioner. The issues remaining for our decision are as follows: (1) Whether petitioner is entitled to dependency exemption deductions in 1963 for David and Marshall Freeman. (2) Whether he is entitled to a child care deduction under section 214, I.R.C. 1954, for David Freeman in 1963. (3) Whether he is entitled to a casualty loss deduction for certain alleged losses incurred when some of his household effects were involved in an accident while being moved. (4) Whether he is entitled to deduct certain expenses and losses which he allegedly incurred in connection with an alleged consulting business and an *294 auction sale of real estate. (5) Whether he incurred a total of $48 in deductible state gasoline taxes in 1963. (6) Whether the amount of the itemized deductions claimed by petitioner exceeded the standard deduction which was allowed by respondent. Findings of Fact Some of the facts have been stipulated and are so found. The stipulated facts and exhibits attached thereto are incorporated herein by this reference. The petitioner, C. James Charles, is an individual with his principal residence in Denver, Colorado, as of the date of the filing of the petition in this case. He filed a separate income tax return as a married individual for the taxable year ended December 31, 1963, within three years from the date due, with the district director of internal revenue at Denver, Colorado. At the end of 1962 petitioner left a job in Santa Monica, California, where he had been working with Douglas Aircraft, and in January of 1963 moved to Los Angeles, California. When he arrived in Los Angeles petitioner moved into the apartment of Edna Freeman, where Edna was living with her two children, Marshall and David Freeman. At this time petitioner moved about 4,500 pounds of his own furniture *295 and other household effects into Edna's apartment. During 1963 Marshall and David were 16 and 12 years of age, respectively. During 183 1963 petitioner's own children, Sylvia Ann and Deborah Francis Charles, were living in a foster home. Soon after he arrived in Los Angeles, petitioner was contacted by the Aerospace Division of the Martin Marietta Corporation, located in Denver, Colorado, and was hired to begin work in Denver on April 1, 1963 as a "systems and advanced design engineer." As an inducement to petitioner to accept this job, Martin Marietta promised to pay his moving expenses to Denver. Petitioner continued to live in Los Angeles with Edna and her two children until April 1, 1963, at which time he flew to Denver and reported for duty with Martin Marietta. Petitioner did not move any furniture with him to Denver at this time. While he was working in Denver, petitioner regularly flew back to Los Angeles on weekends to visit Edna and her children. On July 6, 1963, petitioner and Edna were married in Los Angeles. After the marriage, and until September of 1963, Edna and her children continued to live in Los Angeles, and petitioner continued to work in Denver and visit *296 them on weekends. For some undisclosed period of time prior to September of 1963 Edna worked in the Los Angeles area as a bookkeeper for a manufacturer of children's clothes. By letter of September 3, 1963, Martin Marietta authorized the Gray Moving and Storage Company to pack and move the household effects of the petitioner via motor van on September 4, 1963, from Los Angeles to Denver. Martin Marietta agreed to pay the moving expenses and the expenses of storage in Denver for 30 days for normal household and personal effects not exceeding 8,000 pounds. Martin also agreed to pay for insurance coverage of the articles to be moved in the amount of $1 per pound. The total amount of furniture and personal effects moved weighed approximately 7,500 pounds. This amount consisted of about 4,500 pounds of furniture and other items which belonged to the petitioner and about 3,000 pounds which belonged to Edna. The petitioner's own furniture and other personal effects were owned by him prior to his move to Los Angeles at the beginning of 1963 and had been moved several times on previous occasions when petitioner had changed jobs. The 7,500 pounds of petitioner's and Edna's furniture and *297 other items were moved out of Edna's apartment on September 4, 1963. While the moving van was en route from Los Angeles to Denver, an accident occurred and the van was overturned. Some of the household and personal effects were either lost or damaged. Those items which were not lost at that time were then transferred to another van and shipped to Denver. Later, on January 13, 1964, petitioner obtained two separate estimates for the replacement of lost items and repair of damaged items, totaling $1,464.22 and $1,584.50, respectively. These estimates included the cost of refinishing and "touching up" many of the items, and apparently included much work that cannot properly be classified as damage resulting from the moving van accident. No evidence was introduced to show which of the lost or damaged pieces of furniture or other household effects belonged to petitioner and which of the pieces belonged to Edna. Furthermore, no evidence was introduced to show the extent to which either one of the estimates obtained by petitioner was for the repair of damage caused by the above-mentioned accident and how much was attributable to the repair of damage sustained in moving and transferring *298 the furnishings and prior damage caused by normal wear and tear or other accidents. In this regard, the fair market value of the various articles either before or after the moving van accident is unknown. Thereafter petitioner filed a claim against the Farmers Insurance Group, which had insured the petitioner against moving damage to the above household effects. After correspondence and conferences between petitioner and the insurance company, the company made a final offer of $325 in settlement of petitioner's claim and sent him a check in that amount. Petitioner has kept this check but has never negotiated it. On September 30, 1963, the moving company sent Martin Marietta a bill for $1,192.25 for packing and moving petitioner's and Edna's belongings. The record does not disclose whether all or only a part of this amount was paid by Martin Marietta, however, it does show that Martin made a "supplemental" payment to the moving company on January 2, 1964, in the amount of $231. Petitioner himself paid the moving company $241.30 for additional services beyond those which were authorized by Martin Marietta. When Edna and her two children arrived in Denver in September of 1963, they *299 stayed with petitioner for a short time in an apartment. Soon thereafter all four of them moved into a house at 1250 Niagara Street in Denver. Although petitioner made a 184 deposit of $500 and incurred appraisal expenses of $40 with an eye toward acquiring this house, the sale was not effected. However, petitioner did live in this house through the end of 1963. Petitioner left his job with Martin Marietta on December 6, 1963, and did not work during the remainder of 1963. Petitioner does not know, and at trial did not attempt to estimate the total amount of support which was provided from all sources for Marshall and David Freeman during 1963. During that year Edna contributed unknown amounts toward the support of her two children from her earnings as a bookkeeper. In addition, Marshall, who was 16 years of age, had a part-time job during the year and contributed toward his own support to some extent. David and Marshall also received undisclosed amounts of social security benefits during 1963 by virtue of their late father's death. At the trial petitioner did not attempt to estimate the total amount of his own contributions toward the support of David and Marshall during *300 1963. He merely estimated how much he had given or contributed to Edna that year. It has been stipulated that he provided $117 for medical care and prescription drugs for these boys, and it has also been established that he paid $87.52 for David's transportation from Los Angeles to Denver. Although petitioner incurred certain babysitting expenses for David, they appear to relate to personal and social activities and his testimony as to the amount of such expenditures is vague and not convincing. [1] No other individual contributions by petitioner have been established which were exclusively for the benefit and support of either David or Marshall, or both. During 1963 petitioner gave Edna three of his personal checks in the amount of $100 each, and also endorsed over to her an undisclosed number of salary checks which he received from Martin Marietta, which were in the approximate amount of $330 each. It is not known to what extent these amounts were used by Edna for the support of her two boys. Petitioner did establish, *301 however, that he paid $578.41 for the following household expenses by his personal check and it would appear that at least half of these expenses, or $289.21, was allocable to the joint support of David and Marshall: Telephone
$ 85.54
Rent
368.59
Gas
77.62
Electricity
3.13
"Utility"
3.58
Water
9.10
House Extermination
16.00
Dairy
14.85
Total
$578.41 On his income tax return for 1963 petitioner claimed David and Marshall as dependents and estimated that he provided $700 toward the support of each during that year. He did not estimate their total support from all sources on the return. In his notice of deficiency for 1963 respondent disallowed these claimed dependency deductions. Petitioner kept a record during 1963 which establishes that he drove a total of 14,217 miles in that year and purchased 444.6 gallons of gasoline. Although he deducted $48 for state gasoline taxes on his income tax return for 1963, petitioner actually only paid a total of $26.68 in such taxes during that year. On June 23, 1964, petitioner filed a "Complaint in Annulment" in the Superior Court in Denver, Colorado, against Edna, asking that his marriage to Edna be declared *302 void ab initio. On July 17, 1964, that court entered a "Decree in Annulment" stating that the marriage was void ab initio on the ground that Edna had made "false and fraudulent misrepresentations to [petitioner], which misrepresentations went to the essence of this marriage * * *." Petitioner claimed the following itemized deductions on his 1963 income tax return: Charitable Contributions
United Fund
$ 25.00
Allied Jewish Fund
30.00
Seals, Polio, orphans, etc.
70.00
Total
$ 125.00
Taxes
State Income Taxes
$154.98
State and Local Sales Taxes
125.00
Gasoline Tax (800 gallons at 6()
48.00
Auto License and Tax
12.50
Total
340.48
Other Deductions
Child Care
$600.00
Speech Assoc. of America
13.00
Human Factors Society
15.00
Total
628.00
Total Itemized Deductions
$1,093.48 In his notice of deficiency for 1963, respondent disallowed all of the itemized deductions claimed by petitioner. Respondent then computed petitioner's income tax for 1963 by reference to the tax table for a married person filing separately with one exemption. The amount of petitioner's adjusted gross income for 1963, $4,861.48, is not in dispute. *303 Opinion The first question which we shall consider is whether the petitioner is entitled to deductions in 1963 for personal exemptions for Edna's two children, David and Marshall, as dependents under section 151(a) and (e)(1). [2]
Section 152(a) includes in its definition of a "dependent" a son, daughter, stepson, or stepdaughter of the taxpayer over half of whose support was received from the taxpayer. The burden of proof is on the petitioner to prove not only his own expenditures in support of each child, but also that those amounts exceeded one-half of the total support provided in each instance. Aaron F. Vance, 36 T.C. 547 (1961); Bernard C. Rivers, 33 T.C. 935 (1960). Although petitioner does not need to conclusively prove the exact or precise total cost of the support for each child, he must provide us with convincing evidence establishing that the amounts he provided exceeded one-half of the total support. James E. Stafford, 46 T.C. 515 (1966). Petitioner has admitted that he does not know the total amount of support *304 which was provided for David and Marshall from all sources during 1963. Moreover, he has failed to present evidence from which we could reasonably approximate the total amount of their support. It is clear that a substantial portion of their support was provided by their mother, Edna, and the amount of her support contributions is unknown. In addition, David and Marshall received an unknown amount of social security benefits during 1963 by virtue of their late father's death. The latter benefits, if utilized for support, are considered to be contributions by the children for their own support, and are taken into consideration in computing their total support from all sources. Section 1.152-1(a)(2)(ii), Income Tax Regs.[3] Also, Marshall earned an undisclosed amount of money during 1963, at least part of which was used for his support. *305 At the trial petitioner estimated that he spent about $4,000 during 1963 for the support of himself, Edna, David and Marshall; however, he did not know what portion of the $4,000 was spent for Edna's benefit or how much was allocable to the support of David and Marshall. [4] Petitioner would have us conclude from this information that he contributed over half of David's and Marshall's support during 1963. However, we cannot sustain petitioner's contention. Since petitioner has failed to present any evidence from which we could even 186 approximate the total support of the Freeman children during 1963, it is impossible for us to determine whether he provided more than one-half of their total support in that year. Respondent's determination is presumptively correct. Absent any showing by petitioner that he complied with the support test of section 152, we must hold that he has failed *306 to carry his burden of proof. Respondent's determination on this issue must therefore be sustained. [5]
We turn now to the question of whether or not respondent properly disallowed petitioner's deduction of $600 for child care under section 214. Prior to the amendments to section 214 (which amendments apply only to taxable years beginning after December 31, 1963) that section provided in part as follows: SEC. 214. EXPENSES FOR CARE OF CERTAIN DEPENDENTS. (a) General Rule. - There shall be allowed as a deduction expenses paid during the taxable year by a taxpayer who is a woman or a widower, * * * for the care of one or more dependents (as defined in subsection (c)(1)), but only if such care is for the purpose of enabling the taxpayer to be gainfully employed. Section 214(c)(1), as it applied to the year 1963, defined a "dependent," in part, as a person with respect to whom the taxpayer is entitled *307 to an exemption under section 151(e)(1). We have noted previously that a "dependent" for the purposes of section 151(e)(1) is defined by section 152 as a son, daughter, stepson, or stepdaughter of the taxpayer over half of whose support was received from the taxpayer. On his income tax return for 1963 petitioner claimed a deduction of $600 under section 214 for the care of his two daughters, Sylvia and Deborah, who were living in a foster home during 1963. At the trial he conceded that he was not entitled either to dependency exemption deductions under section 151 or the $600 child care deduction with respect to these two daughters. However, petitioner did argue that he was entitled to a child care deduction under section 214 for "babysitting fees" for Edna's younger son, David. Since we have already held that petitioner has not established that he provided over half of David's support during 1963, it is clear that David was not petitioner's "dependent" for the purposes of section 151 (e)(1) and section 214. We need not consider whether petitioner has satisfied all of the remaining requirements of section 214, but it does appear that most of the babysitting expense for David had *308 nothing to do with enabling the petitioner to be gainfully employed. We conclude and hold that petitioner is not entitled to his claimed child care deduction in 1963; therefore, respondent's determination with respect to this issue is sustained. Petitioner also contends that he is entitled to a casualty loss deduction under section 165 for certain household effects which were damaged or lost in an accident which occurred when these articles were being moved from Los Angeles, California to Denver, Colorado, in September of 1963. Since petitioner received a check for $325 from his insurance company in full settlement of his losses in this accident, he would only be entitled to deduct his losses to the extent that he has established they exceeded $325. In this regard, section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." We are unable to allow petitioner's claimed casualty loss deduction because he has completely failed to prove the amount of loss or damage which occurred in the above accident in regard to his own personal belongings. As we stated in Thomas J. Draper [Dec. 17,806], 15 T.C. 135 (1950), *309 "(basic) in the law is the requirement that to support a deduction for loss of property, the claimant must have been the owner of the property at the critical time." Only 4,500 pounds of the 7,500 pounds of household effects which were in the moving van at the time of the accident were owned by the petitioner, [6] and no evidence was introduced to show which of the lost or damaged articles were owned either exclusively by 187 petitioner or jointly by petitioner and Edna and which of the articles were Edna's own personal property. But even if we knew which of the damaged pieces were owned by the petitioner, the evidence introduced would not enable us to establish the amount of damage caused solely by the above accident. The only evidence presented by petitioner with regard to the amount of loss *310 consisted of two estimates of the cost of repairs or replacement of the property. The general rule is that the taxpayer must show the fair market value of the property immediately before and immediately after the casualty. Section 1.165-7(a)(2)(i), Income Tax Regs. However, the regulations provide that the cost of repairs to the property damaged is also acceptable as evidence of the loss of value, but only if the taxpayer shows, among other things, that the repairs do not care for more than the damage suffered, and that the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. Section 1.165-7(a)(2), Income Tax Regs. Petitioner has failed to meet these requirements. No evidence was introduced to show the extent to which either one of the estimates was for the repair of damage caused by the accident in question and how much was attributable to the repair of prior damage caused by normal wear and tear or other accidents. With regard to those few items which were lost in the the accident, petitioner has not only failed to identify those which belonged to him, but has also failed to establish either *311 the fair market value of his lost belongings immediately before the accident or his adjusted basis in those articles. The regulations provide only for a loss deduction to the extent of the lesser of fair market value or adjusted basis in the case of property which is totally lost in a casualty. Section 1.165-7(b)(1), Income Tax Regs.
On the record presented we find the petitioner has wholly failed to carry his burden of proving that he incurred casualty losses in excess of the amount for which he was compensated by his insurance company. We must conclude and hold that petitioner is not entitled to a casualty loss deduction in 1963. [7]
*312 Although he did not deduct them on his 1963 income tax return, petitioner alleged that he is entitled to deduct certain expenses which he allegedly incurred in attempting to establish a consulting business, and certain losses and expenses which he allegedly incurred in connection with an auction sale of real estate in 1964. Since petitioner failed to introduce any evidence whatsoever with respect to the amount of these alleged losses and expenses, we find that he has failed to sustain his burden of proof, and we need not consider whether such deductions would be otherwise allowable. Respondent is sustained on these issues. Petitioner kept a record during 1963 which establishes that he drove a total of 14,217 miles in that year and purchased 444.6 gallons of gasoline. Although he deducted $48 for state gasoline taxes on his income tax return for 1963, all of which was disallowed by the respondent, petitioner actually only paid a total of $26.68 in such taxes during that year. We hold that petitioner would be entitled to deduct only $26.68 for state gasoline taxes in 1963 as an itemized deduction. In view of our conclusions with respect to the issues discussed above, it is clear *313 that petitioner has failed to prove that he is entitled to any itemized deductions in excess of the standard deduction which was allowed by respondent. [8] Therefore, there is no need for us to consider whether or not respondent properly disallowed petitioner's remaining itemized deductions. Decision will be entered for the respondent. 188 Footnotes
1. In view of our ultimate holdings with respect to the issues involving these babysitting expenses, we need not approximate the amount of such expenditures.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
3. Sec. 1.152-1 General definition of a dependent. * * * (a)(2)(ii) In computing the amount which is contributed for the support of an individual, there must be included any amount which is contributed by such individual for his own support, including income which is ordinarily excludable from gross income, such as benefits received under the Social Security Act (42 U.S.C. ch. 7). * * *↩
4. On his 1963 income tax return petitioner estimated that he spent $700 for the support of each of Edna's boys. At the trial, however, he stated that he did not know how much he contributed toward their support. The $700 estimate on the return was apparently nothing more than an arbitrary guess.↩
5. Since petitioner has not established that he provided over half of David's and Marshall's support during 1963, we need not consider respondent's alternative argument that these boys were not petitioner's "stepsons" within the meaning of sec. 152(a) at any time during 1963.↩
6. We do not find it necessary to decide whether petitioner and Edna were legally married during 1963. However, even if we were to assume arguendo that they were, California law provides that property owned by the husband prior to the marriage (in this case petitioner's 4,500 pounds of household effects) remains his separate property after the marriage. CAL. CIV. CODE Section 163↩.
7. It is conceivable, although not probable, that petitioner was also arguing at trial that he was entitled to deduct his unreimbursed moving expense of $241.30. We need only point out that prior to 1964 it was established in several cases that a person undertaking employment with a new employer could neither deduct moving expenses necessitated by such employment nor exclude from gross income the amount of the moving expenses paid by his employer directly to him or to third parties. See United States v. Woodall, 255 F. 2d 370 (C.A. 10, 1958), certiorari denied 358 U.S. 824 (1958); Koons v. United States, 315 F. 2d 542 (C.A. 9, 1963); Alan J. Vandermade, 36 T.C. 607 (1961); and Willis B. Ferebee, 39 T.C. 801↩ (1963).
8. Respondent calculated petitioner's tax for 1963 by reference to the tax table for a married person filling separately with one exemption and an adjusted gross income of $4,861.48. An amount equal to about ten percent of adjusted gross income is automatically allowed as a standard deduction in each bracket of the tax table. Section 1.141-1(d), Income Tax Regs.↩