DAVID A. ROONEY AND JEANNE R. ROONEY, RICHARD A. PLOTKIN AND PATRICIA D. PLOTKIN, AND GRAFTON H. WILLEY IV, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 31079-84.          Filed March 5, 1987.

David A. Rooney, Richard A. Plotkin, and Grafton H. Willey IV, pro se.

*Robert J. Foley*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined deficiencies in the petitioners' Federal income taxes for 1981 as follows:

---

[2]This amount represents the statutory limit. Sec. 7430(b)(1).

| Petitioners | Deficiency |
|---|---|
| David A. and Jeanne R. Rooney ....................... | $187 |
| Richard A. and Patricia D. Plotkin..................... | 213 |
| Grafton H. Willey IV ................................. | 134 |

After concessions by the petitioners, the sole issue remaining for our decision is whether an accounting partnership, in computing its income, may discount the retail prices of goods and services received in exchange for accounting services by considering the partners' subjective determination of value.

FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

At the time the petition was filed in this case, petitioners David A. and Jeanne R. Rooney, husband and wife, resided in Middletown, Rhode Island; petitioners Richard A. and Patricia D. Plotkin, husband and wife, resided in Newport, Rhode Island; and petitioner Grafton H. Willey, IV, resided in Cranston, Rhode Island. All the petitioners filed their Federal income tax returns for 1981 with the Internal Revenue Service Center in Andover, Massachusetts.

David Rooney, Richard Plotkin, and Grafton Willey are partners in Rooney, Plotkin & Willey (the partnership), a certified public accounting firm located in Newport, Rhode Island. The partnership reports its income on a calendar year basis. The books and records of the partnership are maintained by use of the accrual method. However, adjustments are made at year's end to convert the records to the cash method for Federal income tax purposes. The partnership typically extends trade credit to its clients and bills such clients after accounting services are performed.

The partners make it a practice to patronize the business establishments of many of their clients because they believe it to be good for business. At times, the partners paid for the goods and services received from a client through a practice known as "cross-accounting." On such occasions, they reduced the client's debt to the partnership by an amount equal to the price normally charged for such goods

and services by the client to its retail customers. The partnership then recognized that amount as gross receipts.

During 1981, four of the partnership's clients became delinquent in paying for services rendered in that year. The four clients and their principal businesses were as follows:

| Client | Business |
|---|---|
| Caswell-Massey Pharmacy | Pharmacy |
| Easton Inn Corp. d.b.a. Greenhouse Restaurant | Restaurant |
| Henriques Shell Station | Service station |
| Gary Kirwin | Plumber |

The partnership attempted to collect the unpaid balances by making demands for payment and threatening to institute collection proceedings. After such efforts proved unsuccessful, the partnership allowed the petitioners and their families to receive goods and services from such clients in 1981. The Plotkins received toiletry products from the pharmacy. They also had the plumber do some work at their home. Mr. Rooney purchased automobile tires from Henriques Shell station. All of the petitioners took meals at the restaurant. The partnership used its cross-accounting procedure to credit the clients for these goods and services.

The partners became dissatisfied with the cross-accounting arrangement with these four clients. They determined that some of the goods received were overpriced and that some of the services were not satisfactorily performed and that therefore the value to them of the goods and services was less than the normal retail prices charged by such clients. The partners agreed that they patronized the clients only because they were in danger of going out of business and that the only way to reduce the amount owed to the partnership was to cross-account. Consequently, the partners "discounted" the retail prices of the goods and services received by them from the four clients and reduced the partnership's gross receipts account by the amount of the discount. The retail prices charged by the clients and the adjustments made by the partners were as follows:

| Client | Retail price | Adjustment |
|---|---|---|
| Caswell-Massey Pharmacy | $1,407.37 | $351.84 |
| Easton Inn Corp. d.b.a. Greenhouse Restaurant | 2,021.91 | 1,010.95 |

| Client | Retail price | Adjustment |
|---|---|---|
| Henriques Shell Station | $580.82 | [1]$480.82 |
| Gary Kirwin - plumber | 250.65 | 120.83 |

The total of such adjustments is $1,964.44, but the partnership actually claimed a total adjustment of $1,963.78. The four clients were never informed that the partnership made such adjustments.

The Commissioner issued separate notices of deficiency to the Rooneys, to the Plotkins, and to Mr. Willey. In the notice sent to the Rooneys, he determined that they received an additional $785.62 in taxable income from the partnership as Mr. Rooney's share of the adjustments made to the gross receipts account. In like manner, the Commissioner determined that the Plotkins received an additional $785.62 in partnership income and that Mr. Willey received an additional $389.32 in partnership income. In all three notices of deficiency, the Commissioner made other adjustments relating to the petitioners' shares of income and expenses of the partnership. Such other adjustments were conceded by the petitioners and were not in dispute at trial.

## OPINION

The sole issue for our decision is whether an accounting partnership, in computing its income, may discount the retail prices of goods and services received in exchange for accounting services by considering the partners' subjective determination of value. The petitioners concede that they must report on their individual income tax returns their distributive shares of the income and expenses of the partnership. See secs. 701-704, I.R.C. 1954.[2] They also concede that the gross income of their accounting partnership includes the fair market value of the goods and services received by them in exchange for accounting services. Sec. 61; sec. 1.61-2(d), Income Tax Regs. However,

---

[1] At the end of 1981, the partnership reduced its gross receipts account by $480.82 for Henriques Shell station. The petitioners concede that the adjustment should have been only $100.

[2] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

they challenge the Commissioner's determination of the fair market value of such goods and services. The petitioners have the burden of proving the Commissioner's determination to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure; *Pessin v. Commissioner*, 59 T.C. 473, 480 (1972).

The Commissioner determined the fair market value of the goods and services received by the petitioners to be equal to the prices normally charged by the clients to their retail customers. He argues that such prices represent the fair market value of such goods and services as established by the marketplace and that the petitioners cannot discount such prices for personal reasons. See sec. 1.61-2(d)(1), Income Tax Regs.

Ordinarily, the fair market value of property is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. However, the petitioners argue that their situation calls for a departure from the usual method of measuring fair market value. They claim that they ordinarily did not patronize the four clients but that they did so because such clients were in precarious financial condition and were past due on amounts owed to the partnership. The petitioners contend that they chose to accept goods and services from the clients in order to reduce the amounts owed, rather than risk collecting nothing should the clients go out of business. They claim that circumstances compelled them to accept such goods and services at prices higher than they would otherwise pay. Therefore, the petitioners argue that the value to *them* of such goods and services was less than their retail prices.

In *Koons v. United States*, 315 F.2d 542 (9th Cir. 1963), the court considered a situation similar to the one in this case. In *Koons*, a taxpayer accepted employment which required that he relocate to a new home. His new employer paid the cost of moving the taxpayer's household effects to the new home. The taxpayer did not dispute that the value of the moving services constituted taxable income, nor did he dispute the amount paid by his employer for such

services. However, he argued that he could have moved himself at much less cost and that therefore the value to him of the moving services was less than the amount paid by his employer. The Ninth Circuit rejected the taxpayer's argument, holding that:

the use of any such [subjective] measure of value as is suggested is contrary to the usual way of valuing either services or property, and would make the administration of the tax laws in this area depend upon a knowledge by the Commissioner of the state of mind of the individual taxpayer. We do not think that tax administration should be based upon anything so whimsical. * * * We think that sound administration of the tax laws requires that there be as nearly objective a measure of the value of services that are includible in income as possible, and the only such objective measure * * * is fair market value. * * * [315 F.2d at 545.]

We agree with the court's reasoning in *Koons*. In our judgment, section 61 requires an objective measure of fair market value. See *Koons v. United States*, 315 F.2d at 545; *Kaplan v. United States*, 279 F. Supp. 709, 711 (D. Ariz. 1967).[3] Under such standard, the petitioners may not adjust the acknowledged retail price of the goods and services received merely because they decide among themselves that such goods and services were overpriced.

We are not persuaded by the petitioners' claims that they were compelled by circumstances to patronize these clients and that they were therefore "forced" to accept prices for the goods and services higher than they would have otherwise paid. We believe that their situation cannot be termed a forced purchase. The petitioners themselves made the decision to accept compensation in a form other than cash. Moreover, although the petitioners claim that they would not have willingly paid the retail prices for the goods and services received from the four clients, those prices were, so far as we know, accepted by other customers of those clients and thus represent the prices established in the marketplace. In our judgment, the petitioners must value their compensation by applying an objective measure of fair market value. For such reasons, we hold that the fair market value of the goods and services received by the petitioners is the prices charged by the partnership's clients

---

[3]See also *Estate of Wright v. Commissioner*, 43 B.T.A. 551 (1941); *Champion v. Commissioner*, T.C. Memo. 1960-51, revd. on other grounds 303 F.2d 887 (5th Cir. 1962).

to their retail customers. See sec. 20.2031-1(b), Estate Tax Regs.

*Decision will be entered for the respondent.*