NATHAN L. WADE AND BONNIE W. WADE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wade v. Commissioner
Docket No. 25441-87.
United States Tax Court
T.C. Memo 1988-118; 1988 Tax Ct. Memo LEXIS 146; 55 T.C.M. (CCH) 413; T.C.M. (RIA) 88118; March 17, 1988. Nathan L. Wade and Bonnie W. Wade, pro se. Thomas N. Thompson, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' Federal income tax liabilities as follows: *147 Year
Deficiency
1983
$ 1,162
1984
1,432
1985
659
Three issues remain for decision: (1) The fair market value of trips awarded to petitioner Nathan L. Wade, as a Subaru automobile dealer in Salt Lake City, Utah; (2) whether the imputed cost of one of the trips is deductible as an ordinary and necessary business expense under section 162; [1] and (3) whether a claimed partnership loss is allowable. At the trial of this case in Salt Lake City on February 24, 1988, only the first two issues were tried. The third issue, if not settled, will be tried at a subsequent time. References to petitioner are to Nathan L. Wade. FINDINGS OF FACT Some of the facts have been stipulated and are so found. During the years in issue, petitioner owned and operated a Subaru automobile dealership in Salt Lake City, Utah. In order to promote the sale of automobiles, Subaru of Northern California, Inc., the regional distributor of Subaru automobiles (hereinafter "Subaru"), contracted with local Salt Lake City television *148 stations for advertising time. The television stations offered various incentive programs to increase the level of advertising by their clients. If advertising clients purchased a specified amount of advertising time, the stations awarded to the clients all-expense-paid trips to various international destinations. As advertising time reached higher and higher levels, multiple all-expense-paid trips were awarded. The trips were arranged through travel agencies. Typically, the stations would negotiate group charters at discounted or wholesale prices, and the recipients of the awards would be required to travel with the charter groups for the portion of the trips paid by the stations. In 1983, 1984, 1985, Subaru purchased a significant amount of advertising time from television stations KSL and KUTV in Salt Lake City. Under the advertising incentive programs described above, Subaru received a number of trip awards from the stations. Subaru, in turn, transferred the awards to the owners of Subaru automobile dealerships in the Salt Lake City intermountain area based on their respective annual sales of Subaru automobiles. Petitioner's dealership sold sufficient Subaru automobiles *149 for petitioner to receive five trip awards, as indicated below: Year
Destination
1983
Acapulco
1983
Greece
1984
Monte Carlo
1985
Paris
1985
Israel
Petitioner was awarded two tickets for each trip. In each case, he and his wife used the tickets to fly with other individuals who had received the same trip awards. The groups stayed at specified hotels in each city. Breakfasts generally were provided. Each trip lasted 10 to 14 days with the exception of the trip of Israel which lasted 20 days. On three of the trips, petitioners were joined by another couple. These were friends of petitioners who were not Subaru dealers, nor were they recipients of trip awards from the television stations. In order to make these trips, petitioners' friends located other individuals who had received trip awards but who did not wish to make the trips and who were willing to sell their awards. In each case, petitioners' friends apparently were able to buy two tickets for each of the three trips for $ 2,000 each. Their tickets included both airfare and land packages identical to petitioners. Petitioners' trip to Paris in 1984 varied somewhat from the other trips in that *150 petitioners did not return to the United States with the original group. Petitioners stayed in Europe for an extra 10 days, traveling to Belgium, Germany, and Switzerland at their own expense. While on the extended portion of this trip, petitioner purchased five BMW automobiles and had them shipped to his automobile dealership in Utah. Once in Utah, the BMW's were used by petitioner and his family for personal use and by some of petitioner's automobile salesmen. Petitioner drove one of the BMW's that he purchased in Aachen, Germany, to the port city, approximately 100 miles away, from which the BMW was shipped to the United States. Petitioner's wife drove a second BMW from Aachen to the port city in order to have transportation available at the port city from which petitioners could continue their trip. Upon shipment of the first BMW, petitioner and his wife resumed their trip in the second BMW. For Federal income tax reporting purposes, the TV stations determined their total actual direct costs of the charter flights and land packages for all award recipients and allocated those costs among all of the actual travelers on a pro rata basis. If, for example, there were 60 *151 spaces reserved for a particular trip which cost the station $ 250,000, but only 50 individuals were able to make the trip, the station would allocate $ 5,000 of its total cost to each traveler (i.e., $ 250,000 divided by 50 equals $ 5,000). Petitioner reported as taxable income on his and his wife's Federal income tax returns the value of the trip awards they received each year based upon the amount their friends paid to purchase tickets to travel with petitioners (namely, $ 2,000 each). In his notices of deficiency, respondent treated as taxable income to petitioners the value of the trips as computed by the television stations. OPINION With certain exceptions not relevant here, gross income includes the fair market value of prizes and awards received by a taxpayer. Secs. 61 and 74; sec. 1.74-1(a), Income Tax Regs.; [2]Hornung v. Commissioner,47 T.C. 428 (1967); McCoy v. Commissioner,38 T.C. 841 (1962). Petitioners do not dispute the taxability of the trip awards they received. They do, however, dispute the value of *152 those awards as determined by respondent. *153 In valuing taxable prizes and awards for Federal income tax purposes, courts do not always adopt the same methodology. In some situations, the retail value of prizes and awards is used. In other situations, a wholesale or other discounted value is used. See McCoy v. Commissioner, supra at 844. Objective factors are emphasized, but subjective factors also are given weight in determining the value of prizes and awards to particular taxpayers. See Turner v. Commissioner,T.C. Memo. 1954-38. In Turner, the value was determined of two round-trip, first class steamship tickets from New York City to Buenos Aires which the taxpayer received from a radio station as a promotional award. The Court commented as follows: The winning of the tickets did not provide [the taxpayers] with something which they needed in the ordinary course of their lives and for which they would have made an expenditure in any event, but merely gave them an opportunity to enjoy a luxury otherwise beyond their means. Their value to the petitioners was not equal to their retail *154 cost. They were not transferable and not salable and there were other restrictions on their use. * * * [Turner v. Commissioner, supra, 13 T.C.M. 462, 463, 23 P-H Memo T.C. par. 54,142 at 54-465.]
In the context of valuation questions arising under section 61, courts have emphasized objective factors in determining the amount to be included in a taxpayer's income upon the receipt of property other than cash. Baker v. Commissioner,88 T.C. 1282, 1289-1290 (1987). In Rooney v. Commissioner,88 T.C. 523, 528 (1987), we state that -- Section 61 requires an objective measure of fair market value. Under such standard, the [taxpayers] may not adjust the acknowledged retail price of the goods and services received merely because they decide among themselves that such goods and services were overpriced. [Citations and fn. ref. omitted.] In Koons v. United Stated,315 F.2d 542 (9th Cir. 1963), an employee received household moving services in partial payment for accepting employment at a new location. The *155 Ninth Circuit in Koons rejected the argument that the amount of income charged to the employee with respect to the moving services should be measured on the basis of a subjective valuation thereof by the taxpayer. The Ninth Circuit stated that -- the use of any such [subjective] measure of value as is suggested is contrary to the usual way of valuing either services or property, and would make the administration of the tax laws in this area depend upon a knowledge by the Commissioner of the state of mind of the individual taxpayer. We do not think that tax administration should be based upon anything so whimsical. * * * We think that sound administration of the tax laws requires that there be as nearly objective a measure of the value of services that are includible in income as possible, and only such objective measure * * * is fair market value. [Koons v. United States, supra at 545; Citations omitted.] In McCoy v. Commissioner, supra, arguments similar to those made herein were addressed. The taxpayer argued that the value of a new Lincoln *156 Continental received as an employee award should be controlled by the amount he realized on the sale of the automobile 10 days after he received it. Respondent contended that the employer's cost of the automobile should control. The Court rejected both approaches. The taxpayer's approach was rejected on the ground that the automobile in question had been driven by the taxpayer for 10 days before reselling it. Respondent's approach was rejected on the ground that a new car rarely can be resold at the same price for which it was purchased. Taking into account the principles and policies described above, with emphasis on the objective factors established in this case, we must determine the value of the five international trip awards petitioner received in 1983, 1984, and 1985. Petitioner argues that even though he did not resell the trip awards he received, other award recipients did resell their awards, and his friends purchased those awards for the identical itinerary of his trips. Petitioner therefore argues that the price at which his friends purchased the awards (namely, $ 2,000 each) should control the value of the awards he received. Other than the fact of those isolated *157 purchases, however, we know essentially nothing of the circumstances surrounding those transactions. Neither party to the transactions testified. We are not privy to the factors that may have affected the negotiations. We do not know if the transactions occurred at arm's length. We have only petitioner's brief hearsay testimony with regard to the transactions. With regard to respondent's valuation of the awards based on the allocable portion of the television stations' total costs thereof, witnesses from both stations testified as to how the costs of the trips were negotiated with travel agencies on a group discount basis. The trips were purchased by the stations at a cost significantly below what their retail value was if they had been purchased individually. Under the circumstances of this case, the best measure of the fair market value of the awards is the allocable pro rata portion of the television stations' total direct costs of the trips. [3]
*158 Petitioner argues that the amount included in income with respect to the trip award he and his wife took to Paris in 1984 should be offset by an imputed business expense because he purchased five BMW automobiles while on the extended portion of that trip. We disagree. A trip will not be regarded as business related if it is primarily for pleasure and in the nature of a vacation. A mere casual connection to one's business does not justify treating the cost of the trip as a business expense. Sec. 1.162-2, Income Tax Regs.; McCann v. United States,696 F.2d 1386 (Fed. Cir. 1983). The mere fact that petitioner's wife helped drive one of the BMW's an hour or two from Aachen, Germany to the port city does not establish that the cost of her trip to Paris was business related. In the absence of his wife, petitioner could have purchased a train ticket to return to Aachen. Nor does the fact that petitioner purchased five BMW's and shipped them back to Utah for mixed personal and business use establish that the trip to Paris for a week's vacation was *159 business related. The airplane trip to and from Europe and the time spent in Paris were primarily personal in nature and not business related. On the facts before us, we hold that no portion of the amount includable in petitioner's income with respect to the trip to Paris in 1984 is deductible as an imputed business expense. An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
2. Sec. 74(a) provides in relevant part, as follows: SEC. 74. PRIZES AND AWARDS. (a) General Rule. -- Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.
and Sec. 1.74-1(a), Income Tax Regs., provides as follows: § 1.74-1. Prizes and awards. (a) Inclusion in gross income. (1) Section 74(a) requires the inclusion in gross income of all amounts received as prizes and awards, unless such income under subsection (b), or unless prize or award is a scholarship or fellowship grant excluded from gross income by section 117. Prizes and awards which are includible in gross income include (but are not limited to) amounts received from radio and television giveaway shows, door prizes, and awards in contests of all types, as well as any prizes and awards from an employer to an employee in recognition of some achievement in connection with his employment. (2) If the prize or award is not made in money but is made in goods or services, the fair market value of the goods or services is the amount to be included in income. ↩
3. The computation of petitioner's allocable share should be based on the total number of trips awarded, not on the total number of travelers who actually made the trips. In this manner, the amount chargeable to petitioner will not be affected by whether some of the award recipients were not able to make the trips. To the extent that this requires adjustments to respondent's deficiency determinations herein, such adjustments shall be made as part of the Rule 155, Tax Court Rules of Practice and Procedure↩, computations.